**Benjamin MARGOLIS and William McK. Shongut, Claimants-Appellants,**

v.

**NAZARETH FAIR GROUNDS & FARMERS MARKET, Inc., Debtor-Appellee.**

No. 24, Docket 24564.

United States Court of Appeals
Second Circuit.

Argued Oct. 10, 1957.

Decided Nov. 8, 1957.

Benjamin Margolis, New Rochelle, N. Y., per se.

Armende Lesser, New York City, for claimant-appellant William McK. Shongut.

Alex L. Rosen, New York City, for debtor-appellee.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

The question for decision is whether the equitable powers of a bankruptcy court may be exercised so as to inquire into the validity of claims which have been previously reduced to judgment. The appeals are from a decision and order of the United States District Court for the Southern District of New York, Sugarman, J., which confirmed an order of the referee in bankruptcy disallowing the claims of appellants Margolis and Shongut and directing them to cancel the judgments entered against appellee-debtor. These appeals were argued together and we consider them together as they have a common background.

The bankrupt, Nazareth Fair Grounds & Farmers Market, Inc. was organized in 1951 under the laws of Pennsylvania. Malakoff was president, director and managing agent of Nazareth and played a dominant role in its affairs. By early 1953 Malakoff had become personally indebted to appellant Margolis for over $50,000. Nazareth was in no way indebted to Margolis. Ostensibly to raise money for Nazareth, Malakoff gave Margolis three $4,400 notes in February 1953, one each of the bankrupt and two other corporations which Malakoff also controlled. Margolis was to discount the notes on behalf of Nazareth but was unable to find a buyer. These notes were retained by Margolis, and, after several adjustments which reduced the alleged obligation, the bankrupt's note became the basis of Margolis' $3,600 claim against Nazareth.

In April 1953 Margolis solicited appellant Shongut to lend $10,000 to Nazareth. Shongut delivered his check to Margolis for $9,183.33, payable to Margolis "as attorney" for Shongut and also delivered two other checks to Margolis aggregating $316.67. One of these other checks was similarly endorsed to Margolis "as attorney" for Shongut. In return Margolis delivered to Shongut two $5,000 notes of Nazareth dated April 2, 1953 and a declaration in writing that the loan was made to Nazareth. The proceeds of $9,500 ($10,000 less a $500 bonus charge by Shongut) were deposited in his personal bank account by Margolis who received a legal fee of $100 from Shongut for handling the transaction. Shongut's claim of $10,000 against Nazareth is based upon this transaction.

The Board of Directors of Nazareth at a special meeting on June 4, 1953 adopted a resolution which stated that no defenses or offsets were available to Nazareth against the claims of Margolis and Shongut. The resolution had been prepared in advance by Margolis, who at this time was neither attorney nor director of Nazareth. Furthermore, the note held by Margolis had not yet matured and was not due until July 15, 1953. Malakoff was authorized by the resolution to replace the notes held by Margolis and Shongut with Nazareth's judgment notes, and judgment notes were issued authorizing any attorney of any court of record of Pennsylvania or elsewhere to appear for and enter judgment against Nazareth.

On June 11, exactly one week after the directors' meeting, both appellants reduced their judgment notes to judgment in the Court of Common Pleas, Northampton County, Pennsylvania, by confession. Nazareth was not represented in these non-adversary proceedings.

On September 28, 1953 Nazareth filed a petition in the Southern District of New York for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Appellants filed their judgments and Nazareth filed objections thereto and the matter was heard before the referee.

In regard to the transactions which formed the basis of Margolis' claim, the referee found that no money, property or other consideration was given to or received by Nazareth for the note. In regard to the Shongut transaction he found that in receiving the proceeds and depositing them in his personal bank account, Margolis was acting as agent of Shongut, and that no money, property or other consideration was given to or received by Nazareth for the two notes to Shongut. Accordingly, the referee disallowed the claims of appellants and directed them to cancel the judgments entered against Nazareth. On review before the District Court, Judge Sugarman confirmed the decision and order of the referee and both appellants appealed to this court.

■ The findings of fact of a referee in bankruptcy will not be disturbed unless they are "clearly erroneous." General Order in Bankruptcy 47, 11 U.S.C.A. following § 53.[1] This requirement of Order 47 "has been strictly enforced in this circuit, especially where credibility is a key factor." In Matter of Nemerov, D.C.S.D.N.Y.1955, 134 F.Supp. 678, 681. Here the facts were in dispute and the findings of the referee based in part on his judgment of the credibility of the witnesses who testified before him must be given great weight. See Rasmussen v. Gresly, 8 Cir., 1935, 77 F.2d 252, 254, wherein Judge Sanborn said, "A different rule would virtually make * * * a trial de novo."

■ In our opinion Judge Sugarman correctly found that appellants had failed to establish the "requisite clear error" in the findings of the referee. See In re Connecticut Co., 2 Cir., 1939, 107 F.2d 734; Morris Plan Industrial Bank v. Henderson, 2 Cir., 1942, 131 F.2d 975. The evidence in the record supports the referee's conclusions of fact upon which the order disallowing the claim is founded: that Malakoff, as president, director and managing agent of Nazareth used his position for the purpose of obtaining money on the credit and negotiable paper of Nazareth to be applied in reduction of his own personal indebtedness to Margolis, and that Margolis participated in these machinations.

In disallowing appellants' claims the referee inquired into the validity of the claims notwithstanding the fact that they had been reduced to judgment in the Pennsylvania state court. Appellants strongly urge that the referee was powerless to do this. We do not agree with this contention.

■ Bankruptcy courts are essentially courts of equity endowed with broad equity powers. Pepper v. Litton, 1939, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281. These equitable powers have been invoked "to the end that fraud will not prevail, that substance will not give way to form, that technical consideration will not prevent substantial justice from being done." Id. 308 U.S. at page 305, 60 S.Ct. at page 244. A bankruptcy court may inquire into the validity of any claim asserted against the bankrupt and may disallow it if it is found to be without lawful existence

"and the mere fact that a claim has been reduced to judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned, Boynton v. Ball, 121 U.S. 457, 7 S.Ct. 981, 30 L.Ed. 985, so the court may look behind the judgment to determine

---

1. "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

the essential nature of the liability for purposes of proof and allowance * * * And the bankruptcy trustee may collaterally attack a judgment offered as a claim against the estate for the purpose of showing that it was obtained by collusion of the parties or is founded upon no real debt." Ibid.

■■■■ The judgments presented as claims by the appellants were susceptible to collateral attack on the ground that they were fraudulently obtained and not founded on any legally enforceable obligation. Margolis knew when he prepared the resolution that the recital that Nazareth had no defenses to the Margolis and Shongut notes was untrue. He knew that no consideration had been paid to Nazareth for the issuance of its notes, and he also knew that his own note had not matured at the time of the resolution, which resolution he personally formulated. The doctrine of res judicata in bankruptcy courts "is subject to the paramount equitable powers of bankruptcy courts to prevent the perpetration of fraud and collusion. This principle (is) * * * applicable especially to judgments by default or pro confesso * * *" 3 Collier, Bankruptcy, Sec. 63.07 at 1800–01 (14th Ed. 1940), since the danger of fraud in such judgments is far greater than in adversary proceedings.

Shongut relies heavily upon the case of Heiser v. Woodruff, 1945, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970. In that case the Court was concerned with the application of res judicata to a judgment obtained in a court prior to the bankruptcy proceeding. The bankrupt objected to the allowance of the judgment as a claim, on the ground of fraud. This very same defense of fraud had twice previously been litigated unsuccessfully by the bankrupt and his trustee in the same court where the judgment was rendered. In refusing to permit the bankrupt to raise the fraud allegation again, the court relied on res judicata. However, in language unnecessary to

the decision the court went on to say that in general not only are defenses previously litigated res judicata but defenses "which could have been but were not raised and litigated in the suit" are also res judicata. Id. 327 U.S. at page 735, 66 S.Ct. at page 857.

Shongut argues that the defense of lack of consideration could have been raised by Nazareth in the state court, and therefore, it is precluded from raising it in the bankruptcy proceeding. We do not, however, read this dictum as disturbing the equitable powers of a bankruptcy court recognized in Pepper v. Litton, supra. Equitable relief would be improper where, as in Heiser v. Woodruff, supra, the bankruptcy court is asked to adjudicate a matter which has been fully litigated in another forum. Failure to raise a defense when there was ample opportunity to do so in a prior action will also generally preclude the recognition of the defense in a bankruptcy court. The refusal to entertain the defense in a bankruptcy court is not, however, based upon a technical application of res judicata doctrine, but upon the court's recognition that the equitable considerations underlying that doctrine require its application in the absence of compelling circumstances to the contrary. To the extent that equitable principles require re-examination by the bankruptcy court of the bases for the judgment where these bases have been or could have been previously adjudicated the doctrine of res judicata is inapplicable in bankruptcy proceedings. Here the question of the validity of the claims had not been previously litigated and, in light of Margolis' domination of the debtor's affairs, the bankruptcy court properly exercised its equitable powers in going behind the judgment.

Furthermore, in saying that a party is precluded from raising a defense which could have been raised in prior litigation, the Court in Heiser v. Woodruff, supra, could not have had reference to a situation, as here presented, where the party is prevented by fraud from raising a

valid defense. Nazareth had a valid defense of lack of consideration which it could have asserted against Shongut in the state court but it was prevented from doing so by the fraud practiced at the directors' meeting by Margolis with the acquiescence of Malakoff. Whether or not Shongut was innocent of the fraud, the fact remains that Nazareth was unable to assert this defense until the bankruptcy proceeding. This is, therefore, not a defense which "could have been raised" earlier but was omitted by inadvertence.

The equities of the situation required the referee to go behind the judgments and to determine the validity of appellants' claims, even though the claims had been previously reduced to judgment. Since his findings that Nazareth had no valid obligations to the appellants is amply supported by the evidence, the District Court properly confirmed the order.

The order of the District Court is affirmed.