In the Matter of SALES INCENTIVES
CORPORATION, Bankrupt.

No. BK-67-216.

United States District Court,
D. Rhode Island.

May 12, 1971.

Joel D. Landry, Warwick, R. I., for Lovlee Creations, Inc.

Allan M. Shine, Providence, R. I., Trustee of Winograd, Shine & Zacks.

## OPINION

DAY, Chief Judge.

This is a petition by Lovlee Creations, Inc. (hereinafter called "Lovlee") for a review of the decision and order of the Referee in Bankruptcy entered on March 31, 1970 wherein he denied the petition of Lovlee for the reclamation of certain personal property belonging to the bankrupt, Sales Incentives Corporation (hereinafter called "Sales Incentives"); declared invalid and unenforceable against the Trustee of the bankrupt a certain security agreement between Lovlee and Sales Incentives dated January 10, 1967, and disallowed all but $8,295.50 of the

petitioner's unsecured claim of $50,000, and subordinated said claim in the amount allowed to all other claims filed and allowed against the bankrupt's estate.

In its petition for review petitioner contends that the Referee's decision and order are erroneous on the ground that the Referee made findings of fact which were contrary to the weight of the evidence adduced at numerous hearings in the case, or were entirely without evidentiary support or were internally inconsistent. Included in the record before this Court relating to the instant petition are transcripts of the following proceedings: hearings on Lovlee's petition for reclamation held before the Referee on September 23, 26, 29, 1969; the hearing on the Trustee's Application for a Turnover Order against Lovlee (regarding the personal property involved herein) held on October 31, 1968 and February 6, 1969; hearings on the petition for the appointment of a receiver of the estate and effects of Lovlee filed in the Superior Court of the State of Rhode Island which were held in said court on December 5, 6 and 11, 1967; and the continued first meeting of the creditors of the bankrupt on October 3, 1967.

The record of the proceedings before the Referee discloses that Mr. Adolph Di Mario and Mrs. Ines Di Mario, husband and wife, during 1965, and for an undetermined period of time prior thereto were employed by Sales Charmers, Inc., a corporation located in Central Falls, Rhode Island, and engaged in the manufacture and sale of promotional costume jewelry. Mrs. Di Mario's duties related to the purchasing of materials, contracts and related matters. Adolph Di Mario was the plant superintendent of Sales Charmers, Inc.

Mrs. Ines Di Mario terminated her employment with Sales Charmers, Inc. in September, 1965, and Adolph Di Mario terminated his employment with it in February, 1966.

Sales Incentives, the bankrupt, was incorporated by Mr. and Mrs. Di Mario in March, 1966 for the purpose of conducting a business which was to be essentially of the same type as that of Sales Charmers, Inc. Upon its creation, Mr. and Mrs. Di Mario were its sole officers, and with their attorney they were the directors of Sales Incentives. They owned the majority of the issued capital stock of said corporation and thus had control of said corporation.

Shortly after its organization Sales Incentives leased certain premises at 460 Potters Avenue, in the City of Providence, where it conducted its business. It did not manufacture its promotional jewelry but did purchase the parts thereof and then engaged others to assemble and complete the finished products.

During August and September, 1966, Sales Incentives negotiated an order for its promotional jewelry with Springfield Sugar & Products Company (hereinafter called "Springfield" Sugar) of Suffield, Connecticut, in an amount in excess of $200,000. While it was preparing the first shipment under said order, Mr. and Mrs. Di Mario learned that their former employer, Sales Charmers, Inc., had threatened to seek injunctive relief against said Springfield Sugar if it accepted any deliveries under said order from Sales Incentives.

Mr. Di Mario testified before the Referee that he then contacted other companies with the objective of having them act as a conduit for the Springfield Sugar order, but none of them expressed any interest in doing so. It is undisputed that thereafter Mrs. Di Mario caused Lovlee to be organized on October 17, 1966 to serve as such a conduit between the bankrupt and Springfield Sugar. She was the sole stockholder of Lovlee and became the President, Secretary and Treasurer thereof. No funds were invested therein by her and none of its authorized capital stock was ever issued. Mrs. Di Mario testified at said hearing before the Referee, on October 31, 1968, that the reason she caused the incorpo-

ration of Lovlee was to have said order of Springfield Sugar "go through Lovlee". After its incorporation, the bankrupt purported to transfer said order to Lovlee which, under arrangements between Mr. and Mrs. Di Mario, was to ship said promotional jewelry to Springfield Sugar, send out invoices therefor bearing the name Lovlee Creations, Inc. and make collections of the monies due thereunder. The first delivery of said promotional jewelry was made to Springfield Sugar on November 8, 1966 with subsequent shipments being made every other day thereafter.

The testimony of Mr. Di Mario, both before said Superior Court and the Referee, clearly indicates that Sales Incentives at all times continued to procure the manufacture by others of said promotional jewelry, to package the finished goods and to prepare such packages for shipping.

Under said order from Springfield Sugar, the promotional jewelry which its supermarkets could not sell or otherwise dispose of was returnable for credits. It is not clear from the testimony as to whether Lovlee or Sales Incentives was the addressee of such returns, but it is abundantly clear from the evidence that employees of Sales Incentives physically received and handled all returns. The Referee found that said goods were returned to the bankrupt, and that finding was clearly warranted by the evidence.

The Referee also found that Mrs. Di Mario's assertion that she disassociated herself completely from Sales Incentives was not supported by the evidence. From its incorporation, Lovlee carried on its operations, limited as they were, at 460 Potters Avenue, Providence, Rhode Island, which had been leased by their owner to Sales Incentives, and both corporations occupied space on the first and second floors thereof. There was never any sub-lease of any part of said premises to Lovlee; no separate tax returns were ever· filed by Lovlee and no cancelled checks were produced to support Lovlee's claim that it made loans

to Sales Incentives. This Court has examined the cancelled checks that are a part of the record and finds it significant that with one exception all of said checks were payable to the bankrupt's creditors, not to the bankrupt. This fact alone renders questionable the relationship between Lovlee and Sales Incentives. Moreover, the evidence establishes that Mrs. Di Mario received her last pay-check from Sales Incentives in December, 1966.

The record further shows that an involuntary petition in bankruptcy was filed against Sales Incentives on May 31, 1967, and that it was adjudicated a bankrupt on August 16, 1967. Although said promissory note and security agreement upon which Lovlee bases its claim for reclamation are both dated January 10, 1967, said security agreement was not recorded until March 23, 1967. In its bankruptcy schedules filed by Sales Incentives in August, 1967, Lovlee was not listed as a secured creditor.

The Referee in his opinion found that Adolph Di Mario and Ines Di Mario, the principals of Sales Incentives, and Lovlee were working as a team, that there was no real separation of corporate entities between Sales Incentives and Lovlee, and that the only reason for the latter's existence was to serve as a funnel or conduit through which the bankrupt attempted to fill its Springfield Sugar order. He also found that Sales Incentives, on the date of the execution of said promissory note and security agreement, was insolvent and grossly under-capitalized. He further found that Sales Incentives did not transfer possession of said goods to Lovlee, that the latter served only as a conduit through which the bankrupt's property passed to Springfield Sugar, and that at no time did Lovlee have more than a mere custody of said goods for the purpose of shipment, when ready, to Springfield Sugar and for the rendition ȯf invoices therefor and the collection of the amounts due thereon. Under the circumstances he concluded that it was necessary that said security agreement be

recorded in order to perfect a lien on said goods in favor of Lovlee. Since said agreement was not recorded until March 23, 1967 which was within four (4) months of the filing of said petition in bankruptcy against Sales Incentives, he held that said transfer of the personal property described therein constituted a preference under the provisions of Section 60(a) (1) and (2) of the Bankruptcy Act, Title 11 U.S.C. § 96(a) (1) and (2). Under Section 60(b) of the Bankruptcy Act, Title 11 U.S.C. § 96(b) any such preference may be avoided by the trustee "if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent". The Referee found that at the time of said transfer Mrs. Ines Di Mario had actual knowledge that Sales Incentives was insolvent.

■ The Referee also concluded that said security transaction was fraudulent as to creditors of Sales Incentives under the provisions of Section 67(d) (2) (a), (b), (c) and (d) of the Bankruptcy Act, Title 11 U.S.C. § 107(d) (2) (a), (b), (c) and (d).

Finally, the Referee found that Lovlee had established actual loans or advances to the bankrupt to the extent of only $8,295.50 and in his opinion at page 9 thereof stated:

"Because of the facts already referred to concerning the 'insider' or alter ego nature of this matter and recognizing the fact that in January, 1967, the entire assets of the bankrupt consisted of some scales, desks, chairs, tables, sample goods and displays, and some goods on the floor, while at the same time its creditors' claims exceeded $100,000 (Tr. Sept. 24, 1969, p. 29) this court cannot in the exercise of its equity powers, permit Lovlee to share in the distribution of this estate on the same basis as other creditors even

as to its proved claim in the amount of $8,295.50."
and cited authorities in support of his ruling.

In its petition for review the petitioner asserts eight alleged errors by the Referee in his findings of fact and conclusions. In my opinion most of these contentions are frivolous and merit no discussion herein.

It is well settled that the findings of fact by a Referee must be accepted by the District Court unless they are clearly erroneous. Schwartz v. J. R. Cianchette & Sons Corp., 362 F.2d 500 (1st Cir. 1966); Margolis v. Nazareth Fair Grounds ·& Farmers Market, Inc., 249 F.2d 221 (2d Cir. 1957); In re Inman, 157 F.Supp. 506 (D.Me.1957); In re Drowne, 124 F.Supp. 842 (D.R.I.1954).

■ After a careful study of the transcripts of the testimony and evidence presented during the hearings before the Referee and that of the proceedings in said Superior Court and the reasonable inferences to be drawn from it, I am convinced that his findings of fact are correct. In my opinion he was clearly warranted in concluding that the petitioner acquired no valid lien on the property of the bankrupt by virtue of said security agreement dated January 10, 1967, and that said transaction was void and fraudulent as to the trustee and the creditors of the bankrupt.

Similarly, I am of the opinion that he was warranted in concluding that Lovlee had a valid claim against the bankrupt in the amount of $8,295.50 and in subordinating said claim in that amount to the claims of other creditors against the bankrupt. Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Costello v. Fazio, 256 F.2d 903 (9th Cir. 1958); Margolis v. Nazareth Fair Grounds & Farmers Market, Inc., 249 F.2d 221 (2d Cir. 1957).

Accordingly, the petition for review is denied and the order of the Referee is affirmed.