**In re MASTERCRAFT RECORD PLAT-ING, INC., Longwear Stamper Corporation, and Raleigh Records, Inc.**

No. 83 Civ. 6405 (RLC).

United States District Court,
S.D. New York.

April 9, 1984.

George R. Osborne, New York City, for debtors.

Gadsby & Hannah, New York City, for Keel Mfg., Inc.; Gary A. Woodfield, New York City, of counsel.

Hershcopf & Stevenson, New York City, for Creditors' Committee; Abraham J. Backenroth, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Keel Manufacturing, Inc. ("Keel") appeals here from an order of the bankruptcy court (Abram, J.) dated July 25, 1983, which disallowed Keel's claim against debtors, Mastercraft Record Plating, Inc. ("Mastercraft"), Longwear Stamper Corp. ("Longwear")[1] and Raleigh Records ("Raleigh"). Keel's claim is based upon a final judgment against Mastercraft and Raleigh for the breach of a supply contract. The judgment is based upon the findings of an arbitration panel, which rendered an award for Keel in the amount of $264,838.60, in-

cluding interest, against Mastercraft, Raleigh and Woodbridge Plastics, Inc. ("Woodbridge").[2] The award was confirmed by the New York State Supreme Court, *Keel Mfg., Inc. v. Raleigh Records, Inc.*, Index No. 18137/79, Feb. 15, 1980, and affirmed on appeal by the Appellate Division of the New York State Supreme Court. *Keel Mfg., Inc. v. Raleigh Records, Inc.*, 80 A.D.2d 1005, 437 N.Y.S.2d 994 (1st Dept.1981). The bankruptcy court found, however, that these decisions were incorrect, that debtors Mastercraft and Raleigh were not liable to Keel, and therefore, that the judgment in favor of Keel against debtors could not form the basis for Keel's claim against debtors in bankruptcy. *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106 (1983).

The issue presented here is whether the bankruptcy court concluded correctly that this case was one of a "narrowly defined group of situations" where *res judicata* principles were outweighed by the inherent equitable powers of the bankruptcy court, which allowed it to look behind a judgment to determine the propriety of a claim based upon that judgment.[3] Debtors, of course, argue that the court below acted well within its domain since its equitable powers permit it to inquire into the bases for a claim in the context of Chapter 11 proceedings, the doctrine of *res judicata* notwithstanding. That doctrine is here inapplicable, debtors also assert, because the issue of debtors' liability was never fully adjudicated in state court. Appellant, on the other hand, maintains that this case does not present the bankruptcy court with an opportunity to exercise its equitable powers, and because the state court was presented with the liability issue, this is not a case in which the principles of *res judicata* can be avoided. After carefully con-

---

**1.** Longwear was not involved in the arbitration proceedings, but is wholly owned by Mastercraft.

**2.** Woodbridge, a company related to Mastercraft and Raleigh, was sold in 1976 and is not involved in the pending bankruptcy proceedings.

**3.** The Bankruptcy Court wrote:

> Generally [the court] will afford *res judicata* effect to a judgment and allow a claim on the basis of the judgment without looking behind the judgment. However, in a narrowly defined group of situations, the bankruptcy court may and does look behind the judgment.

(32 B.R. at 109).

sidering the relevant precedents and their application to the facts before it, the court finds that the bankruptcy court exceeded its authority in overturning the judgment against debtors, and in disallowing Keel's claim.

*Background*

The Chapter 11 proceedings instituted by Mastercraft in May, 1980, and by Raleigh and Longwear in June, 1980, resulted from Keel's judgment against them. The contract on which the judgment was based was formed in May, 1973, between Raleigh, Mastercraft, Woodbridge and Keel. Both Mastercraft and Woodbridge were in the business of producing materials for customers to use in the pressing of phonograph records. Mastercraft made nickel electroplated masters; Woodbridge produced a vinyl plastics compound. Keel had been a long-time customer of theirs. Raleigh was solely a sales organization for phonograph records.

The contract provided, *inter alia,* that the former three parties waived their claims against Keel for its breach of a 1972 agreement, and provided for the purchase by Keel of certain quantities of vinyl compound from Woodbridge. A second contract, entered into between the same corporations on the same day, contained the identical waiver provision, and provided for the sale by Mastercraft to Keel of certain quantities of metal masters. Both contracts contained arbitration clauses.[4] Both contracts were signed by Len Frank, "as President of Raleigh, Mastercraft and Woodbridge."

Due to severe shortages in all petrochemical products and Woodbridge's inability to obtain sufficient quantities of the resin needed to produce the vinyl compound, difficulties arose shortly after the contracts were signed. As a result, Keel made other arrangements to obtain the product and eventually established its own compounding plant. In November, 1974, Keel initiated arbitration proceedings to terminate the contracts and recover damages. The Notice of Arbitration, dated December, 1974, was addressed to Raleigh.

Apparently, from 1975 through 1979, the arbitration was procedurally mired. Although some hearings were held in January, 1978, the proceedings were interrupted when a panel member withdrew. Hearings did not resume until March, 1979. During this period debtors did not claim that they were not proper parties to the arbitration and Raleigh and Mastercraft participated fully throughout. In their post arbitration memorandum they contended that they were not liable under the contract with Keel. The arbitrators' award against them was made on August 8, 1979.

Subsequently, Keel moved to confirm the arbitration award in the New York Supreme Court, Special Term, Part I and debtors cross-moved to vacate the award. Debtors again made the argument that they were not obligated to Keel under the contract at issue. In confirming the award, the New York Supreme Court concluded that there was "ample basis ... for arbitors to treat these three companies, for purposes of liability, as they themselves did, i.e., as a single entity." *Keel Mfg., Inc. v. Raleigh Records, Inc., supra,* 80 A.D.2d 1005, 437 N.Y.S.2d 994 at 2. The Appellate Division affirmed this decision after being briefed fully on debtors' claim of non-liability. *Keel Mfg., Inc. v. Raleigh Records, Inc., supra.*

This claim came before the bankruptcy court as a result of several motions made by Keel to prevent confirmation of debtors' consolidated reorganization plan.[5] Debtors opposed the motions and counter-moved on various issues. The bankruptcy court found that the issue underlying all the dis-

4. The Arbitration clause of the contracts provided that
   [a]ny controversy or claim arising out of, or related to, thus [sic] Agreement or the breach hereof, shall be settled by binding arbitration ... by a panel of three (3) arbitrators....

5. Keel had earlier sought to vacate the court's order approving the disclosure statement, and had filed a plan of its own.

putes presented was whether Keel has a claim against debtors. In considering this issue, the court concluded that it was "the final arbitrator of the allowability of claims" (32 B.R. at 109), and that upon reviewing the basis for Keel's claim, it could not sanction the judgment rendered and approved by the arbitration panel and New York courts.

*Determination*

There are two points upon which the court bases its conclusion that the bankruptcy court exceeded its authority in reaching the merits of the liability claim. The first is on grounds of *res judicata*. The second concerns the scope of judicial review accorded arbitration proceedings.

### 1. *Res Judicata*

The bankruptcy court was correct in concluding that in certain situations it could look behind a judgment to determine whether a "claim is founded upon no real debt." (32 B.R. at 110). It was incorrect in concluding that this was one of them. In *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the Court found that because of a bankruptcy court's equitable powers "to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence[,] .... the mere fact that a claim has been reduced to judgment does not prevent such an inquiry."

*Id.* at 305, 60 S.Ct. at 244. (citations omitted). The merger of a claim into a judgment, the Court held, did not change its nature so far as provability was concerned and the bankruptcy court could, therefore, for purposes of proof and allowance, look behind the judgment "to determine the essential nature of the liability." *Id.* at 305–06, 60 S.Ct. at 244–45.

This broad language in the *Pepper* opinion was not, however, free-floating. The Court's discussion of the bankruptcy court's vast equitable powers followed a clear explication of the facts. It was plain, the Court noted in *Pepper,* that the issue considered by the bankruptcy court in disallowing the creditor's claim was not an issue which the state court had addressed.[6] Consequently, there could be no question that the state judgment was not *res judicata.*[7] "The decision in *Pepper v. Litton,*" the Court wrote later, "thus affords no support for ... [the] contention that the doctrine of *res judicata* is inapplicable in a bankruptcy proceeding." *Heiser v. Woodruff,* 327 U.S. 726, 738 n. *, 66 S.Ct. 853, 858, 90 L.Ed. 970 (1946).[8] Where the issue of whether a judgment had been fraudulently procured had been twice litigated and decided in the court which rendered the judgment, that issue, the Court held in *Heiser,* could not be relitigated in the bankruptcy court in determining a claim's allowability based upon the judgment.

---

**6.** A judgment had been procured against a corporation upon an alleged fictitious claim for salary, which was entered on confession by one of the officers of the corporation. Subsequently, the corporation was adjudged a bankrupt upon its voluntary petition. The trustee in bankruptcy then moved in state court to set aside the judgment on the ground that the judgment was void since the confession of judgment did not conform to the Virginia statute. The court agreed with the trustee, but denied the motion, finding the trustee estopped from challenging the judgment. The state had been asked to consider and had considered only whether the judgment should be cancelled as a record obligation of the bankrupt. It had not reached the question of the validity of the judgment's underlying claim.

**7.** *See Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979) (*res judicata*

ensures finality of decisions: final judgment on merits bars further claims by parties or privies based on same cause of action).

**8.** Discussing *Pepper v. Litton, supra,* the Court wrote:

> Undoubtedly, since the bankruptcy act authorizes proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. But it is quite another matter to say that the bankruptcy court may reexamine the issues determined by the judgment itself.

*Heiser v. Woodruff, supra,* 327 U.S. at 736, 66 S.Ct. at 858.

▆ Thus, although *Pepper* made clear that the bankruptcy court may look behind a judgment based on its equitable powers in deciding whether a claim should be allowed, disallowed, or subordinated, principles of *res judicata* were not discarded and still had to be taken into account. *Pepper* has been interpreted to mean that "[t]he doctrine of *res judicata,* as applied to the bankruptcy court ... [in such situations] is subject to the paramount equitable powers of bankruptcy courts to prevent the perpetration of fraud and collusion," 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice,* ¶ 0.419[3.-6] p. 687 (2d ed. 1983), and as permitting the bankruptcy court to challenge a judgment on the ground that the rendering court lacked jurisdiction. *Kapp v. Naturelle,* 611 F.2d 703 (8th Cir.1979). There is no authority, however, sanctioning a bankruptcy court's consideration *de novo* of an issue which has been presented to or decided by a state court having jurisdiction over the dispute.[9] Furthermore, the court can find no support—in precedent or logic—for debtors' contention that an issue decided on limited judicial review should be exempt from *res judicata* doctrine.

### 2. Limited Scope of Judicial Review in Arbitration Proceedings

▆ Such an exemption would, in fact, defeat the purpose of arbitration proceedings. "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Diapulse Corp. of Am. v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d

Cir.1980), citing *Wilko v. Swan,* 346 U.S. 427, 431–32, 74 S.Ct. 182, 184–85, 98 L.Ed. 168 (1953). Extensive judicial review of arbitration proceedings would obviously frustrate that purpose. *Saxis Steamship Co. v. Multifacs Int'l Traders, Inc.,* 375 F.2d 577, 582 (2d Cir.1967). Therefore, both federal and state courts are constrained in their review of arbitration awards; the role of the courts is respectively limited to ascertaining whether there exists one of the specific grounds for the vacation of an award provided in § 10 of the Arbitration Act, 9 U.S.C. § 10, *id.* or in CPLR § 7511(b), *Santiago v. City of Plattsburgh,* 70 A.D.2d 982, 417 N.Y.S.2d 793 (3d Dep't.1979).[10] It is beyond question that neither court may second-guess an arbitrator's resolution of a particular dispute. The merits may not be relitigated, and the record of an arbitration proceeding may not be inspected for questions of law or fact. *See, e.g., Bernhardt v. Polygraphic Co. of Am.,* 350 U.S. 198, 203 & n. 4, 76 S.Ct. 273, 276 & n. 4, 100 L.Ed. 199; *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 702–04 (2d Cir.1978); *Security & Law Enforcement Employees, Dist. Council 82, Am. Fed'n of State and Mun. Employees,* 116 Misc.2d 766, 455 N.Y.S.2d 1004 (Sup.Ct.Albany Cty.1982), *aff'd,* 96 A.D.2d 976, 466 N.Y.S.2d 841 (3d Dep't.1983).

In deciding the merits of the dispute concerning debtors' liability to Keel, an issue plainly considered by the arbitration panel,[11] the bankruptcy court inexplicably placed itself outside of the rules governing both the state and federal courts. The bankruptcy act does not authorize this

---

9. Because of the bankruptcy court's reliance on *Margolis v. Nazareth Fair Grounds & Farmers Market,* 249 F.2d 221 (2d Cir.1957), the Court notes that the decision is not contrary authority. In *Margolis,* the bankruptcy court found that the underlying judgment had been obtained by fraud and collusion. These issues had not, however, been raised in the prior proceedings. "Equitable relief would be improper," the court noted, "where, as in *Heiser v. Woodruff, supra,* the bankruptcy court is asked to adjudicate a matter which has been fully litigated in another forum." *Id.* at 224.

10. The federal and state statutes provide similar grounds for vacating an arbitration award. These include cases in which:
   —the award was procured by corruption, fraud or undue means;
   —the parties were prejudiced by the arbitrators' misconduct or partiality;
   —the arbitrators' exceeded their powers, or so imperfectly exercised them that a mutual, final, and definite award upon the subject matter submitted was not made.

11. The arbitration panel had been briefed thoroughly on the question of debtors' liability to Keel before it made its award to the latter party.

step, nor are there policy arguments in favor thereof. Even in the absence of a judgment confirming the arbitration award, therefore, in determining whether to allow Keel's claim based on the award, the bankruptcy court could not overturn the arbitration award without some justification greater than its disagreement with the arbitrators' contract construction.[12]

The arbitration award and the confirming judgment are entitled to respect in the bankruptcy court and Keel's claim cannot be disallowed based on the court's own findings on the merits.

IT IS SO ORDERED.

---

**12.** *See Local Division 1179, Amalgamated Transit Union, AFL–CIO v. Green Bus Lines, Inc.,* 50 N.Y.2d 1007, 431 N.Y.S.2d 680, 680, 409 N.E.2d 1354, 1354 (1980) (error for Appellate Division to have vacated award merely because it disagreed with arbitrator's interpretation of parties' agreement).

There is no argument here that the arbitrators' contract construction was irrational. *Vehicle Accident Indemnification Corp. v. Singleton,* 85 A.D.2d 525, 452 N.Y.S.2d 615, 616 (1st Dep't. 1982) (arbitrator's award will not be vacated unless so irrational as to require vacatur). The New York Supreme Court made the following findings:

Both contracts are dated the same day … and in format are substantially similar. In each all the appellants waived rights they may have had against Keel under a 1972 agreement which the two contracts were replacing. Significantly both contracts describe the three appellants as 'related corporations,' and both are signed by Len Frank in his identical capacity as president of all three appellants.

The court also noted that:

neither Raleigh nor Mastercraft ever objected to jurisdiction under CPLR 7503…. Having made no objection to the notice of arbitration and having appeared and fully participated, respondents can no longer assert the absence of a valid arbitration agreement binding all of them. (citations omitted) *Keel Mfg., Inc. v. Raleigh Records, Inc., supra,* 80 A.D.2d 1005, 437 N.Y.S.2d 994 at 3.