In re FUTURONICS CORPORATION, Debtor.

FUTURONICS CORPORATION, Debtor–Appellant,

v.

GENESCO INC., Claimant–Appellee.

Nos. 88 Civ. 6008 (PKL), 88 Civ. 6009 (PKL).

United States District Court, S.D. New York.

April 2, 1990.

Michael D. Zimler, Garden City, N.Y. (Michael E. Lipson, of counsel), Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City (David M. Friedman, Harry M. Gutfleish, of counsel), for debtor-appellant.

Otterbourg, Steindler, Houston & Rosen, New York City (Richard J. Rubin, of counsel), for claimant-appellee.

## OPINION & ORDER

LEISURE, District Judge:

Futuronics Corporation ("Futuronics") appeals from two decisions by the Honorable Cornelius Blackshear, United States Bankruptcy Judge of the Southern District of New York. First, Futuronics is appealing from Judge Blackshear's decision, dated February 11, 1988, which granted Gen-

esco Inc. ("Genesco") damages in the sum of $282,233.50 for Genesco's unsecured claim against Futuronics. Second, Futuronics appeals from Judge Blackshear's decision, dated May 16, 1988, which denied Futuronics' motion to reargue the February 11, 1988 decision. The two appeals are designated, respectively, 88 Civ. 6008 and 88 Civ. 6009.[1] The Court will consider the two appeals together.

## BACKGROUND

Genesco's claim against Futuronics arises out of Futuronics' default and subsequent rejection of a sublease between Futuronics and Genesco. The sublease was for a manufacturing building located in North Brookfield, Massachusetts (hereinafter the "premises"). In May 1962, Genesco's wholly-owned subsidiary, Kleven Shoe Sales Co. ("Kleven"), signed a twenty-five year lease with the then owners of the premises (hereinafter the "original lease" or "primary lease"). At that time, Genesco executed a guarantee which provided that it would be obligated to pay rent for the premises even if the lease was assigned or the premises was subleased to another party. In or about 1963, Genesco succeeded to all of Kleven's rights and obligations under the lease.

In October 1972, Genesco subleased the premises to Futuronics for a term of fifteen years, which was the remainder of Genesco's leasehold under the original lease. The sublease provided that Futuronics would assume Genesco's rights and obligations under the original lease including the obligation to pay a base rent of $126,000 per year. In May 1973, Futuronics purchased the premises from Atlas Capital Corporation, who had previously acquired the premises, as well as the landlord's interest in Genesco's original lease and guarantee. Thus, Futuronics became both Genesco's landlord and Genesco's subtenant.

In or about November 1974, Futuronics defaulted on the two mortgages which it

carried on the premises. The first mortgage was held by Prudential Insurance Company of America ("Prudential"), and the second mortgage was held by Massachusetts Business Development Corporation ("MBDC"). It appears that Futuronics' default was caused by the United States' wrongful termination of approximately nineteen contracts in which Futuronics was to provide the Government with electro-mechanical equipment. After defaulting on the mortgages, Futuronics filed a petition for reorganization, in January 1975, under Chapter 11 of the Bankruptcy Reform Act of 1898 (the "Bankruptcy Act"). Soon thereafter, MBDC forcibly seized possession of the premises, evicting Futuronics from the building. Then, in May 1975, Bankruptcy Referee Asa A. Herzog of United States District Court for the Southern District of New York entered an order formally terminating Futuronics' sublease with Genesco. At the same time, Prudential demanded that Genesco pay the rent in arrears for the premises pursuant to Genesco's guarantee for the rent.

After protracted litigation on its liability to Prudential, Genesco reached a settlement with Prudential in April 1977. The settlement agreement provided that Genesco's original lease "[had] not been terminated and is, and at all times material hereto was, in full force and effect." *See* Debtor–Appellant's Amended Record on Appeal, Exhibit 5(11). The agreement further outlined modifications to the primary lease which included, *inter alia*, a reduction in the base rent to an amount of $112,429.68 per year. This figure corresponded with the amortized mortgage payments of approximately $909,000 due to Prudential under Prudential's mortgage for the premises. In addition, Prudential granted Genesco an option to purchase the premises at any time during the remaining lease period.

The premises remained vacant from the time of MBDC's eviction of Futuronics, in January 1975, until Genesco entered into a new sublease for the premises, in September 1977, with a group of investors doing

---

**1.** Attorney Michael D. Zimler, along with Michael E. Lipson, Esq., appeared on behalf of Futuronics in Futuronics' initial appearances for both appeals. Attorneys Zimler and Lipson were replaced by the firm of Gordon Hurwitz Butowsky Weitzen Shalov & Wein on Futuronics' reply briefs.

business as Brookfield Partnership ("Brookfield"). The agreement with Brookfield provided for Genesco's receipt of a base rent of $24,000 per year for the first 30 months of the agreement, and $50,000 per year therafter, until the expiration of the agreement in 1982. In addition, Genesco granted Brookfield an option to purchase the premises for $450,000. Thus, Genesco suffered a significant loss in its arrangement with Brookfield for the new sublease of the premises. Genesco now wishes to hold Futuronics responsible for that loss.

Futuronics alleges that Genesco's deal with Brookfield did not reflect the fair market rent for the premises. Indeed, during the May 1986 hearing before Judge Blackshear, which is the source of Futuronics' appeals here, Futuronics' expert appraisal witness, Anthony Romano, testified that the fair market rent for the premises was $214,650 per year. Genesco, on the other hand, had engaged Lewis Heafitz ("Heafitz"), a Boston real estate broker, to relet the premises in 1976. Heafitz claimed that he was initially unable to find a new tenant or purchaser for the premises because of the poor location of the premises and the downturn in the local economy. Further, Genesco claims that the sublease with Brookfield was the result of reasonable efforts to relet the premises. Judge Blackshear rejected both positions, stating, "[t]he Court finds both arguments unconvincing." *See In re Futuronics Corp.,* Case No. 75 B. 11, slip op. at 6 (Bankr.S.D. N.Y. February 11, 1988). Judge Blackshear then determined that the fair rental value of the premises was $88,200 per year. *Id.*

In January 1979, the Armed Services Board of Contract Appeals ("ASBCA") upheld Futuronics' appeal to reclassify the Government's termination of Futuronics' contracts from "Termination for Default" to "Termination for the Convenience of the Government." As a result of this ruling by the ASBCA, Futuronics and the Government reached a settlement agreement whereby the Government assumed many of the obligations owed by Futuronics to vendors and subcontractors who had done work for Futuronics to complete the Government contracts. Presumably these obligations were left unpaid because Futuronics lost the Government contracts. However, the bankruptcy court required that all Futuronics' creditors subject to the settlement be given actual and constructive notice of Futuronics' settlement with the Government before the Government assumed Futuronics' obligations.

In February 1979, Futuronics held a creditors' meeting during which the provisions of Futuronics' settlement were to be explained to Futuronics' creditors affected by the settlement. Futuronics contends that Genesco should be included under the rubric of "vendors and subcontractors," so that Genesco's claim is subject to Futuronics' settlement with the Government. In addition, Futuronics claims that it gave Genesco actual and constructive notice of the settlement as required by the bankruptcy court. Genesco maintains that its status as Futuronics' sublessor is not subject to Futuronics' settlement with the Government because sublessors are not to be included with the "vendors and subcontractors" affected by the settlement. Further, Genesco claims that it did not receive any notice of the settlement until April 1986, a few weeks prior to the hearing before Judge Blackshear.

Judge Blackshear allowed both parties to present evidence on the issue of whether actual or constructive notice of Futuronics' settlement with the Governement was given to Genesco.[2] Albert Blanck ("Blanck"), Futuronics' president, testified that, to his knowledge and belief, notice was sent to Genesco as one of Futuronics' creditors. In addition, Burton R. Lifland, Esq. ("Lifland"), Futuronics' counsel in 1979, stated at the February 1979 creditors' meeting that "notice has been sent to all creditors." *See* Brief for Debtor–Appellant at 24. However, during the 1986 hearing, Futuronics could not produce an affidavit of service showing that it had served Genesco with valid service in 1979. Indeed, during

---

**2.** It appears that Judge Blackshear would have found Genesco's claim subject to Futuronics' settlement with the Government if Futuronics presented sufficient evidence of notice of the settlement having been given to Genesco.

cross-examination of Blanck at the 1986 hearing, Genesco's counsel adduced testimony from Blanck that Blanck did not consider the settlement notice form to be "applicable to [Genesco]." *See* Brief for Claimant–Appellee at 13. Based, in part, on the aforementioned evidence, Judge Blackshear decided that no notice was given to Genesco. Thus, Judge Blackshear granted Genesco's motion to strike Futuronics' defense that the Government was responsible for Genesco's claim under Futuronics' settlement with the Government.

Moreover, in fairness to Futuronics, Judge Blackshear and the parties agreed that, if Futuronics could locate the affidavit of service for Futuronics' notice to Genesco, Futuronics could submit the affidavit to the court and preserve its previously-stricken defense. In its motion for reargument of Judge Blackshear's February 11, 1988 decision, Futuronics proffered allegedly newly discovered evidence which consisted of (1) an affidavit of service upon the creditors' committee, (2) the entry from the bankruptcy court docket recording this affidavit of service, and (3) a letter from attorney Lifland acknowledging that such notice was served upon the creditors' committee. After reviewing this new evidence, Judge Blackshear denied Futuronics' motion for reargument by an order dated May 16, 1988.

Futuronics, in the instant appeal, asserts several arguments for reversing Judge Blackshear's decisions which the Court will review as four separate arguments, some of which contain subparts.[3] The four arguments are as follows: (1) the MBDC's eviction of Futuronics from the premises in 1975 should have operated as a constructive eviction of Genesco, thereby terminating Genesco's obligation to pay rent under the original lease and guarantee; (2) Genesco's settlement with Prudential in 1977 should have extinguished Futuronics' obligations to Genesco under the sublease; (3) Judge Blackshear's determination of fair

rental value for the premises was clearly erroneous; and (4) Judge Blackshear's determination that Genesco did not receive notice of Futuronics' settlement with the Government, especially in light of Futuronics' newly discovered evidence, was also clearly erroneous. For the reasons set forth below, the Court affirms Judge Blackshear's decisions in their entirety.

## DISCUSSION

The standard for a district court's review of the factual determinations of a bankruptcy proceeding is set forth in Bankruptcy Rule 8013 which states, "[f]indings of fact ... shall not be set aside unless clearly erroneous." *See, e.g., Manville Forest Prods. Corp. v. Gulf States Exploration Co.*, 896 F.2d 1384, 1388 (2d Cir.1990); *Brunner v. New York State Higher Educ. Svcs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *Truck Drivers Local 807 v. Carey Transportation Inc.*, 816 F.2d 82, 88 (2d Cir.1987). In addition, if the trial court's determination is based on the credibility of witnesses, the reviewing court should show even "greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (discussing Fed. R.Civ.P. 52(a)). *See also Margolis v. Nazerth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 223 (2d Cir.1957); Bankruptcy Rule 8013 ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").[4] The Court will consider Futuronics' arguments in light of this deferential standard.

### I. MBDC's 1975 Eviction of Futuronics

Futuronics contends that Genesco was freed from any liability owed to Prudential for unpaid rent when MBDC forci-

---

**3.** Futuronics' initial briefs on its two appeals contain several overlapping arguments. Genesco's counsel described Futuronics' approach as a "buckshot." The Court does not find such a description inappropriate. However, Futuronics' reply briefs set out the separate arguments

for each appeal in a more succinct manner. In any event, the Court, as set forth above, has addressed all of Futuronics' contentions.

**4.** The standard of review which is granted to the findings of fact by a district court judge under Rule 52(a) is the same as the standard to be

bly seized the premises in January 1975 in response to Futuronics' default on MBDC's mortgage. Thus, Futuronics believes that it should not be obligated to pay Genesco any rent under the sublease. It is clear that, despite Futuronics' broad assertion, Genesco remained liable for unpaid rent for the premises under the original lease now held by Prudential. Indeed, it would be anomalous to extinguish the liability owed to a senior creditor, here Prudential as first mortgagee, by the actions taken by a junior creditor, MBDC as second mortgagee. Moreover, Futuronics cites no authority which supports its position. Thus, although Judge Blackshear's decision did not expressly reach this issue, Futuronics' argument is insupportable and therefore must fail.[5]

## II. Genesco's 1977 Settlement with Prudential

■ Futuronics claims that its obligation to pay rent to Genesco under the sublease was extinguished when Genesco entered into a settlement with Prudential for Genesco's obligation to make rental payments under the primary lease. Futuronics asserts two reasons allegedly supporting its position. First, Futuronics claims that Genesco's position improved as a result of the agreement. Second, Futuronics contends that the sublease required Genesco and Prudential to give notice to, and get the acquiesence of, Futuronics for any modification of the primary lease. Both arguments are without merit.

As a result of its settlement with Prudential, Genesco received a reduction in its rental obligation, as well as an option to purchase the premises. However, after Futuronics rejected the sublease in 1975, Genesco no longer had a subtenant for the premises to pay any portion of the reduced rent. Far from being in a better position,

Genesco was obligated to pay rent for the premises, whereas, prior to Futuronics' bankruptcy, Genesco paid no rent at all for the premises. The benefits of Genesco's negotiated settlement, which mitigated the harsh results which otherwise would have befallen Genesco, should not inure to Futuronics as sublessor of the premises.

■ Moreover, Futuronics' belief that Genesco and Prudential owed notice to, and had to seek the approval of, Futuronics before modifying the primary lease is illogical. Such notice was required by the sublease between Genesco and Futuronics when the parties entered into the sublease in 1972. However, the sublease was unilaterally terminated by Futuronics in 1975, nearly two years before Genesco entered into the settlement with Prudential. Further, Futuronics' rejection of the sublease did not terminate its obligation to pay rent for the unexpired term of the sublease. Futuronics had a continuing obligation to pay rent because of the governing bankruptcy provisions. In the instant case, Futuronics attempts to revive a term from the previously terminated sublease. Clearly, Genesco and Prudential had no obligation to notify and seek the approval of Futuronics for their modification of the primary lease. Futuronics fails to show that Genesco's settlement with Prudential absolved Futuronics of its obligation to pay rent under the unexpired sublease.

## III. The Fair Rental Value for the Premises

■ Futuronics makes three arguments in support of its allegations that Judge Blackshear's determination of the fair rental value for the premises was in error. First, Futuronics claims that Judge Blackshear was required to accept the testimony of Futuronics' expert real estate appraiser, Anthony Romano, because Genesco alleg-

---

given to the bankruptcy court judge's findings under Bankruptcy Rule 8013. See 9 L. King, Collier on Bankruptcy ¶ 8013–2 (15th ed. 1988).

**5.** Futuronics alleges that Judge Blackshear failed to set out separate statements of facts and law in his February 11, 1988, as required by Fed.R.Civ.P. 52, incorporated into these proceedings by Bankruptcy Rule 7052. However, a plain reading of Judge Blackshear's decision

reveals that he amply complied with Rule 52. In addition, Futuronics claims that Judge Blackshear failed to address, in his written decision, a number of arguments which Futuronics raised during the three day hearing. However, Futuronics has not shown that Judge Blackshear's decision is required to address each argument raised by the parties. Indeed, such a requirement finds no support in case law or procedural rules.

edly did not have an equally qualified expert testify at the 1986 hearing. Second, Futuronics alleges that Genesco failed to mitigate the losses which Genesco incurred due to Futuronics' rejection of the sublease. Third, Futuronics claims that Genesco's damages for the rejection of the sublease was governed solely by the liquidation damage clause in the sublease. The Court is not persuaded that Judge Blackshear's decision was in error on these issues.

As described above, Judge Blackshear heard testimony from witnesses for Futuronics and Genesco in regard to the proper rental value for the premises. Although Genesco's witnesses did not carry the title of expert real estate appraiser, they did possess first hand knowledge of the premises and the efforts expended in reletting the premises. The Court gives due regard to Judge Blackshear's determination of "the credibility of the witnesses," and finds that Judge Blackshear's rejection of Futuronics' expert's testimony was not clearly erroneous. Bankruptcy Rule 8013. *See Anderson, supra,* 470 U.S. at 575, 105 S.Ct. at 1512.

■ Futuronics next contends that Genesco failed to mitigate the damages suffered as a result of Futuronics' rejection of the sublease. In support of this argument, Futuronics notes that Genesco listed the premises with only a single real estate broker who allegedly was unfamiliar with the real estate market in North Brookfield. In addition, Futuronics points to Brookfield Partnership's subsequent leases for the premises which netted Brookfield substantially higher rents than Genesco was able to procure. These contested allegations do not sufficiently show that Futuronics has carried its burden "of showing how plaintiff acted unreasonably or what damages it could have mitigated." *Magnaleasing, Inc. v. Staten Island Mall,* 428 F.Supp. 1039, 1046 (S.D.N.Y.), *aff'd,* 563 F.2d 567 (2d Cir.1977). Indeed, Judge Blackshear heard testimony that Genesco's real estate

broker was initially unable to relet the premises at any price. The Court accepts Judge Blackshear's decision that Genesco exercised reasonable efforts in reletting the premises.[6]

■ Finally, Futuronics contends that Genesco's damages for Futuronics' rejection of the sublease are governed by the liquidation damage clause in the sublease. Futuronics' argument fails for two reasons. First, as Judge Blackshear correctly noted, Section 353 of the Bankruptcy Act, which the parties agree governs the instant action, "affords two sources upon which a landlord may draw in order to ground a claim for damages: the landlord may seek damages for rejection of the lease, or, in the alternative, he may seek damages under a damage or indemnity clause carried in the abrograted lease." *In re D.H. Overmyer Co.,* 10 Collier Bankr.Cas. 17, 21 (Bankr.S.D.N.Y.1976). And second, the liquidation damage clause in issue here states that, "[t]he foregoing rights [liquidation damage rights] of Sublessor [Genesco] shall be additional to and not in limitation of any other rights it [Genesco] may otherwise have." *See* Debtor–Appellant's Amended Record on Appeal, 5(2). It is clear that Judge Blackshear was correct in his determination that the damage clause was not the sole remedy available to Genesco. Thus, Judge Blackshear's determination of fair rental value for the premises shall remain intact.

*IV. Futuronics' Alleged Notice to Genesco of the Government Settlement in 1979*

■ Lastly, Futuronics claims that the United States Government is responsible for Futuronics' debt to Genesco pursuant to Futuronics' settlement with the Government in January 1979. In support of this argument, Futuronics points to its newly discovered evidence which allegedly proves that Genesco received actual or constructive notice of Futuronics' settlement with the Government, thereby subjecting Genes-

---

**6.** Indeed, the fair rental value set by Judge Blackshear reduces Futuronics' rent obligation from $126,000 per year to $88,200 per year. In addition, Judge Blackshear rejected Genesco's assertion of fair rental value as the rent from its agreement with Brookfield, increasing the amount from $24,000 per year. Thus, Futuronics benefits from Judge Blackshear's determination of fair rental value.

 

co's claim to the settlement. However, the newly discovered evidence shows only that the creditors' committee was served with notice of Futuronics' settlement with the Government. It does not prove that Genesco received such notice. Futuronics has failed to show that Judge Blackshear's denial for reargument was clearly erroneous, and Futuronics' appeal from Judge Blackshear's decision is therefore denied.

## CONCLUSION

Futuronics' objections to Judge Blackshear's decision that allowed Genesco to recover damages from Futuronics are without merit. In addition, Futuronics' objections to Judge Blackshear's denial of its motion for reargument are without merit. Accordingly, Futuronics' two appeals to overturn Judge Blackshear's decisions are denied.

SO ORDERED.