**In the Matter of INTERCO INCORPORATED, et al., Debtors.**

**Bankruptcy No. 91–40442–172.**
**Claim Objection No. 24.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Feb. 21, 1992.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

This Order addresses the Objection ("Claim Objection 24") of Interco Incorporated ("Interco") to several claims that request payments based on Interco's guaranties of certain leases that had been rejected or will be rejected by other debtor companies affiliated with Interco.

### I. Background

On January 24, 1991, Interco and 30 affiliated entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. These cases are being jointly administered.

This is a core proceeding pursuant to Section 157(b)(2)(B) of Title 28 of the Unit-

---

ed States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

On November 4, 1991, Debtor, Interco, filed a "Consolidated Objection of Interco Incorporated to Proofs of Claim." This claim objection originally encompassed objections to 54 claims filed by various claimants against Interco, arising from the "rejection or anticipated rejection of certain real property leases (the "Leases") by debtor companies that are affiliated with Interco ("Debtor Lessees") and are based on guaranties of the Leases by Interco." Claim Objection 24, November 4, 1991 at 2.

A preliminary hearing on the Objection was held on December 19, 1991. On that date, this Court sustained Debtor's objection to a claim filed by claimant Joseph P. Day Realty Corp., because claimant failed to respond to the objection. The Claimant subsequently filed a motion to vacate the order that sustained the objection, arguing that the failure to respond was based on excusable neglect. That Motion was heard on February 10, 1992. The Claimant's Motion to Vacate was denied by the Court from the bench on that date.

On January 9, 1992, this Court entered two Orders: (1) a "Stipulation for Withdrawal of Objection Without Prejudice," referring to certain claims; and (2) an "Agreed Order of Debtor and JMB with Respect to Objection No. 24 and Certain Claims." The Stipulation and Agreed Order approved the withdrawal of Debtor's Objection to certain of the claims in Objection No. 24. As to the claims of Claimants JMB Properties Company, Center Partners Limited, and Cadillac Fairview Shopping Center (collectively, "JMB"), together, the Stipulation and Agreed Order provided that Debtor's Objection to certain claims were withdrawn and that JMB withdrew certain other claims. As a result, no objections to the claims of the JMB entities were prosecuted as part of Claim Objection 24. However, pursuant to the Agreed Order, JMB was permitted to intervene and participate in the briefing and oral argument on the guaranty question that is being addressed here.

In addition to the JMB entities, other Claimants who participated in the briefing and/or oral argument process involving Claim Objection No. 24 included: Garrett & Garrett, Nalley Commercial Properties, Cedarwood Associates, Fairfield Plaza Partnership, Johnson Enterprises and Lone Star Equities, Inc. (collectively, "Claimants" or "Lessors"). Attached to this Order as Exhibit A is a schedule of the claimants and claim numbers affected by this Order.

A pre-trial scheduling order established that the hearing on February 10, 1992 was to be limited to "the narrow legal issue of whether Section 502(b)(6) [of Title 11] applies to limit claims against bankrupt guarantors who have guaranteed real property leases ..." *See* Order Relating to Briefing Schedule, December 17, 1991.

## II. Section 502(b)(6)

Section 502(b)(6) of the Bankruptcy Code states:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

. . . . .

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

. . . . .

Debtor argues that the limitation of Section 502(b)(6) clearly applies to guarantors of leases. Claimants argue that the plain language of Section 502(b)(6) caps a lessor's damages against a tenant only, and not against a guarantor.

### III. Discussion

■ Section 502(b)(6) applies a cap to the "claim of a lessor for damages resulting from the termination of a lease of real property ..." The discussion here concerns the question of whether the lessor's damages against a guarantor of a lease are to be capped, when *both* the tenant and the guarantor are Chapter 11 debtors.

Section 502 of the Bankruptcy Code governs the allowance of claims or interests. "Subsection (b) prescribes the grounds on which a claim may be disallowed. The court will apply these standards if there is an objection to a proof of claim." S.Rep. 95–989, 95th Cong., 2d Sess. 62, reprinted in 1978 U.S.C.C.A.N. 5787, 5848. Section 502(b)(6) applies a cap to the "claim of a lessor for damages resulting from the termination of a lease of real property ..."

■ "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). On its face, Section 502(b)(6) neither includes nor excludes guarantors from the statutory limit on damages. Rather, the statute is directed to the limitation of the amount of a lessor's damages that may be recovered from a bankruptcy estate, when the damages arise

from the termination of a lease The result is not to limit the liability of a particular entity, but to limit the amount of damages the lessor may be allowed from bankruptcy estate assets. Thus, a literal application of the statute would result in limiting the allowance of damages that a lessor of real property may recover from the estate of a Chapter 11 Debtor for termination of a lease, regardless of the identity of the entity that is the debtor.

The application of the Section 502(b)(6) cap to guarantors that are debtors will not "produce a result demonstrably at odds with intentions of its drafters." *Ron Pair Enterprises*, 489 U.S. at 242, 109 S.Ct. at 1031. Section 502(b)(6) is "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." S.Rep. 95–989, 95th Cong., 2d Sess. 63, reprinted in 1978 U.S.C.C.A.N. 5787, 5849.[1] The rationale for this subsection is further explained in *Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2d Cir.1944) as follows:

> But allowance in full of such [rent] claims did not seem the appropriate answer, since other general creditors would suffer proportionately, and the claims themselves would often be disproportionate in amount to any actual damage suffered, particularly in the event of a subsequent rise in rental values. In truth, the landlord is not in the same position as other general creditors, and there is no very compelling reason why he should be treated on a par with them. For, after all, he has been compensated up until the date of the bankruptcy petition, he regains his original assets upon bankruptcy, and the unexpired term in no way really benefits the assets of the bankrupt's estate.

*Id.* at 920.[2]

It is apparent from the legislative history and case law that the purpose of Section

---

**1.** Section 502(b)(7) was redesignated as section 502(b)(6) in the Bankruptcy Amendments, and Federal Judgeship Act of 1984, Pub.L. No. 98–353.

**2.** The *Oldden* court was analyzing Section 63 of the Bankruptcy Act. This analysis is applicable to Section 502(b)(6) in that the current subsection echoes the language of the Bankruptcy Act

502(b)(6) is to compensate the landlord fairly while protecting other creditors in a bankruptcy case. This rationale is applicable whether the debtor is the tenant or the guarantor of the lease. Although the dynamics of the economic relationship between lessors and lessees have changed considerably since Congress enacted this limitation in 1978, absent an expression of Congressional intent to the contrary, the Court must find and conclude that the literal application of Section 502(b)(6) limits the damages recoverable by the lessors here.[3] This literal application does not produce a result demonstrably at odds with the rationale of the section. *See In re Rodman,* 60 B.R. 334, 335 (Bankr.W.D.Okla.1986) (finding the "principles of rateable distribution are equally applicable in the case of a debtor-guarantor as they are in the case of a debtor-principal.")[4]

Claimants rely on several cases to support their contention that lessors damages are not capped when the debtor is guarantor. These cases include: *In re Modern Textile, Inc.,* 900 F.2d 1184 (8th Cir.1990); *Bel–Ken Assoc. Ltd. Partnership v. Clark,* 83 B.R. 357 (D.Maryland 1988); *In re Danrik, Ltd.,* 92 B.R. 964 (Bankr.N.D.Ga.1988); and *In re Johnson,* 117 B.R. 461 (Bankr. D.Minn.1990).

In *In re Modern Textile, Inc.,* the Eighth Circuit held that a lessor could "still look to the person or entity that guaranteed the debtor's lease obligations" because the "discharge of a debt of the debtor [tenant] does not affect the liability of any other entity on … such debt." *Id.* at 1191 (quoting 11 U.S.C. § 524(e)). Unlike the situation here, in *Modern Textile* the guarantor of the lease was not a debtor in a bankruptcy case. This distinction, in light of the interpretation of the Congressional intent adopted in this Order, removes the binding effect of the Eighth Circuit precedent in those situations where the guarantor is itself a debtor in a bankruptcy case.

In *Bel–Ken Assoc. Ltd. Partnership,* the District Court held the Section 502(b)(6) cap did not apply to guarantors. 83 B.R. at 359. However, once again, in *Bel–Ken* the guarantors were not debtors in a bankruptcy case. *Id.* at 358. Thus, *Bel–Ken* is not applicable to this situation.

In *In re Danrik,* the Bankruptcy Court directed its discussion to the "primary issue … [of] whether § 502(b)(6) applies to limit a claim against a debtor who has guaranteed a lease *and obtained confirmation of a Chapter 11 plan paying all other unsecured creditors in full.*" 92 B.R. at 967 (emphasis added). The bankruptcy court decided that Section 502(b)(6) did not apply literally, and "[g]iven the facts of this unusual case where we have a solvent guarantor-debtor, where all other claims have been paid in full, where the lessee itself has not sought the protection of the bankruptcy court, and where the claim is not disproportionately large," the Court overruled the debtor's objection to "that portion of [the lessor's] claim which exceeds the formula in § 502(b)(6)." *Id.* at 972.

The *Danrik* decision has not been accepted by courts that have adopted a literal reading of Section 502(b)(6). *Matter of Federated Dept. Stores, Inc.,* 131 B.R. 808,

---

and Congress expressly stated "[t]his paragraph will not overrule Oldden, or the proposition for which it has been read to stand …" S.Rep. No. 95–989.

**3.** Presumably Congress included Section 502(b)(6) in the 1978 Bankruptcy Code, in part on the assumption that landlords would suffer little from the termination of leases and would, instead, benefit "in the event of a subsequent rise in rental values." *Oldden,* 143 F.2d at 920. Whether this assumption is still valid and the rationale behind Section 502(b)(6) still wise is not for this Court to decide. "A judge is not at liberty to substitute his own social and economic predilections in contravention of an express

statutory mandate." *In re Miller,* 4 B.R. 305, 309 (1980). "The judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation." *Id.* (quoting *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 400, 57 S.Ct. 578, 587, 81 L.Ed. 703 (1937)).

**4.** Among other authority, Debtor relies on "*In re Revco D.S., Inc.,* Nos. 588–1308—1321, 588–1305, 588–1761—1812, 588–1821, slip op. [138] B.R. [528] (Bankr.N.D.Ohio, June 28, 1991)." Debtor's Brief, January 17, 1992 and Debtor's Reply Brief, February 6, 1992. Research has revealed the *Revco* decision has not been published.

817 (Bankr.S.D.Ohio 1991) (citing *In re Thompson*, 116 B.R. 610 (Bankr.S.D.Ohio 1990)). As noted above, this Court has found that a literal application of Section 502(b)(6) is appropriate. Further, this Court notes that the *Danrik* Court took particular care to point out the "unusual" nature of the circumstances at the time of its consideration of this issue. The situation here is distinguishable in that the Debtor has not "obtained confirmation of Chapter 11 plan paying all other unsecured creditors in full." *Danrik*, 92 B.R. at 967.

Finally, in *In re Johnson*, the Bankruptcy Court analyzed Section 502(b)(7), which limits the "claim of an employee for damages resulting from the termination of an employment contract ..." 117 B.R. at 465 (quoting 11 U.S.C. § 502(b)(7)). The Debtor, Harry A. Johnson, Jr. guaranteed all terms and conditions of an Employment Agreement between a separate corporate debtor and Vernon R. Beck. The Employment Agreement had been terminated before Johnson commenced a Chapter 11 case. The *Johnson* Court found that "Section 502(b)(7) does not operate ... to cap [the] guarantor's liability to [the employee]." *Id.* at 470. This Court notes *Johnson* is not directly applicable, in that it dealt with a pre-bankruptcy termination of an employment contract that the Court determined was subject to Section 502(b)(7), and not Section 502(b)(6). The *Johnson* Court did analogize Section 502(b)(6) to Section 502(b)(7) to support its determination. However, the *Johnson* court relied on *In re Modern Textile, Bel–Ken Assoc.* and *In re Danrik*, all of which this Court finds are distinguishable from the situation here.

In conclusion, the Court has found Section 502(b)(6) applies a cap to damages resulting from the termination of lease of real property; and that read literally, it applies to cap the damages of a lessor when the guarantor of the lease is a debtor under Title 11. Neither the legislative history nor the applicable case law demonstrates that this literal application would thwart Congress' purpose. Therefore

IT IS ORDERED that this hearing is concluded; and that the Debtors' objections are SUSTAINED; and that with respect to the Proofs of Claims listed on Exhibit "A" hereto, the amount of damages that may be recovered by the claimants as lessors, against these Debtors as guarantors under the rejected executor contracts referred to in these pleadings is limited by the terms of 11 U.S.C. § 502(b)(6).

EXHIBIT A

| Claimant | Claim Nos. |
|---|---|
| 1. Garrett & Garrett | 04195 |
| c/o Jean Winborne Boyles | 04198 |
| P.O. Box 100 | 04200 |
| Durham, NC 27702 | 04205 |
| | 04206 |
| | 04218 |
| | 04223 |
| | 04224 |
| | 04456 |
| | 04458 |
| | 04459 |
| | 04461 |
| | 04462 |
| | 04463 |
| | 04466 |
| | 04473 |
| | 04475 |
| 2. Nalley Commercial Properties | 04219 |
| c/o Jean Winborne Boyles | 04469 |
| P.O. Box 100 | 04472 |
| Durham, NC 27702 | 04476 |

| Claimant | Claim Nos. |
|---|---|
| 3. Cedarwood Associates<br>c/o Jean Winborne Boyles<br>P.O. Box 100<br>Durham, NC 27702 | 04221 |
| 4. Lone Star Equities, Inc.<br>211 Broadway<br>Suite 2202<br>Lynbrook, NY 11563 | 02981 |
| 5. Johnson Enterprises<br>Attn: Joanne B. Stutz<br>P.O. Box 5340<br>Statesville, NC 28677 | 04026 |
| 6. Fairfield Plaza Partnership<br>c/o Richard J. Tuggle, Sr.<br>Drawer X<br>Greensboro, NC 27402 | 04608 |