In re Norman E. LINDSEY, Katherine C. Lindsey, Debtors in Possession.

Ronald CUTLER, Trustee, Appellant,

v.

Norman E. LINDSEY, Katherine C. Lindsey, Appellees.

Civil Action No. 96–602–A.
Bankruptcy No. 92–13698–AB.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 7, 1996.

Roy B. Zimmerman, Alexandria, VA, for Debtors/Appellees.

Richard S. Stolker, Rockville, MD, for Trustee Appellant.

### MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is the appeal of Ronald Cutler, Trustee, of an order issued by the United States Bankruptcy Court (Bostetter, C.J.) on March 27, 1996. Appellant has appealed the ruling of the bankruptcy court which reduced the allowed claim of Ronald Cutler, Trustee, from $356,954.68 plus interest to $76,039.65. The debtor/appellee has filed a cross appeal challenging the bankruptcy court's award of attorneys' fees to appellant. For the reasons discussed below, the decision of the bankruptcy court is affirmed in all respects.

### PROCEDURAL HISTORY

The appellees, Norman E. Lindsey and Katherine C. Lindsey, filed for relief under

Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. §§ 101 *et seq.* on July 30, 1992 in the Eastern District of Virginia. On December 2, 1992, Ronald Cutler, Trustee, filed a partially secured claim in the amount of $431,771.68 plus interest based on a Corrected Final Judgment ("Final Judgment") against debtor/appellee Norman E. Lindsey entered on September 11, 1991 in the United States District Court for the Southern District of Florida. The debtor/appellee filed an objection to the Cutler claim on August 1, 1995. This objection was based on appellee's contention that the claim exceeded the amount allowable under Title 11 U.S.C. § 502(b)(6), which significantly limits claims for unpaid rent made by lessors against debtors.

The parties attended a hearing before the bankruptcy court on October 31, 1995. On December 13, 1995, Judge Bostetter issued an order reducing the Cutler claim to $76,039.65 based upon the fact that the Final Judgment arose from a claim for unpaid rent:

> IT FURTHER APPEARING that the above said Judgment is for rent and that pursuant to 11 U.S.C. 502(b)(6) a claim based on a terminated lease cannot exceed 15% of the remaining term plus unpaid rent due as of the date of termination . . .

> IT FURTHER APPEARING that the claim of Ronald E. Cutler, Trustee in the amount of $431,771.68 should be reduced and allowed in the amount of $76,039.65 plus interest at the rate of ten percent per annum from September 11, 1990. . . .

Order of the Bankruptcy Court dated December 13, 1995.

The bankruptcy court arrived at the sum of $76,039.65 by taking 15% of the total amount due on the lease, or $63,010.20, plus $5,529.45 for pre-termination rent and adding $7,500 for attorneys' fees. The debtor/appellee Norman E. Lindsey filed a motion to reconsider the Order of December 13, 1995, seeking reversal of the bankruptcy court's decision to allow appellant to recover interest and attorneys' fees in addition to the § 502(b)(6) cap on unpaid rent. On March 27, 1996, the bankruptcy court issued an order disallowing appellant's claim for interest but permitting the recovery of $7,500 in

attorneys' fees in addition to the 15% cap. Appellant filed this appeal to this Court, and appellee has filed a cross appeal challenging the award of attorneys' fees.

## STATEMENT OF FACTS

Appellant is a lessor of certain property located in Broward County, Florida. In August 1985, P/T of Dania, Inc. entered into a ten-year lease with appellant to operate an automotive repair shop on this property. The lease required monthly rent payments by the tenant, who was also responsible for real estate taxes and insurance payments for the property. The debtor/appellee Norman E. Lindsey personally guaranteed the lease. The total minimum rent to be paid according to the lease was $528,276.00.

The tenant defaulted as of February 1988. Appellant filed a civil action for unpaid rent against the guarantor, Norman Lindsey, in United States District Court for the Southern District of Florida in 1989. On January 24, 1990, the district court granted summary judgment in favor of plaintiff/appellant based on defendant Lindsey's procedural default. Defendant Lindsey was represented by counsel and had filed an Answer to plaintiff's Amended Complaint but failed to respond to the Motion for Summary Judgment.

A hearing was held on the issue of damages, and the district court subsequently entered judgment in favor of plaintiff/appellant in the amount of $356,954.68 plus interest. Defendant/appellee failed to appeal this final judgment. The judgment included a set of findings of fact which specifically addressed the assessment of damages:

> 9. The tenant and NORMAN E. LINDSEY failed to make the required real estate tax payments for the year 1987 in the amount of $1,141.39, for the year 1988 in the amount of $3,797.33, and for the years 1989 and subsequent years in the annual amount of $658.

> 10. The tenant and NORMAN E. LINDSEY failed to make the required insurance payments for the year 1988 in the amount of $649 and for the year 1989 and subsequent years in the annual amount of $658.

11. The tenant and NORMAN E. LINDSEY failed to correct an alteration made to the premises at a cost to the landlord of $572.40.

12. The total amount of unpaid rent subsequent to default and termination of the lease is $420,068. The reasonable rental value of the subject premises as of termination through the remainder of the stated term of the lease is $72,000.

The Final Judgment was superseded by a Corrected Final Judgment entered on September 11, 1991, which merely corrected a clerical error. This Corrected Final Judgment was recorded among the land records of Oconee County, Georgia on October 28, 1991; in the Circuit Court for Fairfax County, Virginia on July 19, 1990; in the Circuit Court for Montgomery County, Maryland on June 4, 1991; and in the Circuit Court for Worcester County, Maryland on July 8, 1991. Appellant acquired lien rights against the property of debtor/appellee as a result of these actions.

### STANDARD OF REVIEW

■ The standard of appellate review to be applied in this case as to questions of law is that of a *de novo* review. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir.1985). According to Bankruptcy Rule 8013, questions of fact must be reviewed under a clearly erroneous standard.

### ANALYSIS

**I. The Judicial Hierarchy and the Power of the bankruptcy court to Apply § 502(b)(6) to a Claim Based upon a District Court Judgment**

■ Appellant urges this Court to find that a bankruptcy court may not set aside the unappealed final judgment of a United States District Court, and, therefore, the bankruptcy court erred when it reduced appellant's claim from $431,771.68 to $76,039.65. This Court agrees that, as a general matter, a party should not be able to use the bankruptcy courts to attack collaterally final judgments of federal district courts. Parties who find themselves dissatisfied with the results of a proceeding in federal district court should appeal those findings to the appropri-

ate circuit court for appellate review. However, the bankruptcy court in the case at issue did not set aside the Final Judgment. Judge Bostetter found that the Cutler claim *"should be reduced and allowed* in the amount of $76,039.65." See Order dated December 13, 1995 (emphasis added).

As a practical matter, the bankruptcy court's reduction of the Cutler claim nullifies the Final Judgment because appellant will not be able to recover the remainder of the $431,771.68 judgment. If the debtor's Chapter 11 reorganization is approved by the bankruptcy court, appellant will receive $76,039.65 and, thereafter, debtor/appellee will be forever discharged from paying the remainder of the Final Judgment.

■ The bankruptcy court has the power to look behind and reduce claims based on judgments issued by other courts, both state and federal. In *Margolis v. Nazareth Fair Grounds*, 249 F.2d 221 (2nd Cir.1957), the Second Circuit held that

> A bankruptcy court may inquire into the validity of any claim asserted against the bankrupt and may disallow it if it is found to be without lawful existence and the mere fact that a claim has been reduced to a judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned, *Boynton v. Ball*, 121 U.S. 457 [7 S.Ct. 981, 30 L.Ed. 985] (1887), so the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance....

*Id.* 249 F.2d at 223.

In *Margolis*, the bankruptcy court disallowed a claim, which was supported by a judgment from a Pennsylvania state court, because the court found that the creditor had fraudulently obtained the judgment. Therefore, the court properly exercised its equitable powers to look behind the judgment and disallow the claim.

There is no allegation by appellee in this case that the Final Judgment was obtained fraudulently. It is undisputed that appellant was the lessor and debtor/appellee the guar-

antor of the lease in question. In addition, debtor/appellee was represented by counsel during the course of the litigation in Florida.[1]

*In re Bus Stop, Inc.,* 3 B.R. 26 (Bankr. S.D.Fla.1980), the bankruptcy court held that the reasoning in *Margolis* could be applied to claims by lessors for unpaid rent arising under § 502(b)(6). In that case, a creditor/landlord filed a claim for unpaid rent, which he supported with a judgment obtained from a state court in Florida before the debtor had filed for bankruptcy. The bankruptcy court reduced the creditor/landlord's claim for future rent to fifteen percent of the rent due for the remaining term of the lease despite the fact that the creditor/landlord had obtained a judgment for the entire accelerated rent eight days before the debtor filed for bankruptcy. The court looked behind this judgment and applied the fifteen percent cap set by § 502(b)(6) because the underlying substance of the creditor's claim related directly to a landlord's claim for unpaid rent.

Following this line of cases, this Court finds that the bankruptcy court correctly applied § 502(b)(6) to the Cutler claim because the claim clearly arises out of the termination of a lease for which debtor/appellant had given his personal guaranty.

## II. Cutler's Claim: Lien Creditor or Claim of a Landlord for Unpaid Rent

Appellant further argues that § 502(b)(6) was intended to limit only those claims for unpaid rent made by landlords who were unsecured general creditors as opposed to landlords who have reduced their claims for unpaid rent to judgments. Appellant relies on the legislative history of § 502(b)(6) for support. Specifically, that history seems to suggest by the phrase "other general unsecured creditors" that Congress viewed the average landlord as a general unsecured creditor and enacted § 502(b)(6) so as to treat all unsecured gen-

eral creditors relatively the same. Appellant argues that because it was a secured creditor, it should not be subject to § 502(b)(6):

[Section 502(b)(6)] was designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent *other general unsecured creditors* from recovering a dividend from the estate.

S.Rep. 95–989, 95th Cong., 2nd Sess. 63, reprinted in 1978 U.S.C.C.A.N. 5787, 5849 (emphasis added). Although appellant's argument is not illogical, the statute itself simply uses the term lessor and makes no distinction between secured and unsecured lessors:

(b) Except as provided in subsections (e)(2), (f), (g), (h), and (k) of this section, if [ ... ] objection to a claim is made, the court, after notice and hearing ... shall allow such claim ... except to the extent

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates ...

Title 11 U.S.C. § 502(b)(6). Because the plain language of the statute is not ambiguous, the legislative history is not relevant. Congress clearly intended to limit significantly the claims of landlords for unpaid rent through bankruptcy proceedings out of a concern that future rent payments for long-

---

1. For some reason unexplained by appellee, counsel for debtor/appellee Norman Lindsey filed an Answer to the Amended Complaint which formed the basis of appellant Cutler's claim for unpaid rent but failed to file an opposition to appellant Cutler's summary judgment motion. Because of this procedural default, the district

court judge granted summary judgment in favor of appellant Cutler as to liability and set a hearing date to determine damages, which was held May 31, 1990. Appellee is currently represented by different counsel than the counsel who represented him in the Florida proceeding.

term leases would prevent other creditors from recovering any funds from the bankrupt estate.

In this case, the parties cannot dispute that this claim falls within the definition of a "claim of a lessor for damages resulting from the termination of a lease of real property." Furthermore, it is clear that a substantial portion of the damages awarded by the Final Judgment are for future rent, despite the trial court's $72,000 reduction for "reasonable rental value." See Final Order at ¶ 12. Because the plain language of the statute does not differentiate between claims which have been reduced to a judgment and claims which have not been reduced to a judgment, the fact that appellant secured a judgment in court and filed such judgment in Georgia or elsewhere does not preclude the application of § 502(b)(6) by the bankruptcy court. This Court finds that the bankruptcy court correctly applied § 502(b)(6) to the Cutler claim because it is a "claim of a lessor for damages resulting from the termination of a lease of real property."

### III. Right to Limitation of § 502(b)(6): Tenant v. Guarantor

■ As with the issue discussed above, appellant attempts to raise a distinction, in this instance between tenants and guarantors, to bring this case outside of § 502(b)(6). The majority of courts which have addressed this issue have held that claims by landlords for unpaid rent are subject to the limitations of § 502(b)(6) whether they are brought by a landlord against a tenant or a guarantor of a lease. See *In re Rodman*, 60 B.R. 334 (Bankr.W.D.Okla.1986); *In re Thompson*, 116 B.R. 610 (Bankr.S.D.Ohio 1990); *In re Interco, Inc.*, 137 B.R. 1003 (Bankr.E.D.Mo. 1992); and *In re Farley*, 146 B.R. 739 (Bankr.N.D.Ill.1992). But see *In re Danrik, Ltd.*, 92 B.R. 964 (Bankr.N.D.Ga.1988). In *Danrik*, the debtor was a guarantor who had paid all other creditors in full and had sufficient monies to pay the landlord in full. Using its equity powers, the bankruptcy court held that· § 502(b)(6) did not limit the landlord's claim under these facts. However, section 502(b)(6) contemplates the more common problem of landlords recovering a disproportionate share of the estate, as in the instant case where the debtor had personally guaranteed the lease at issue; however, the evidence clearly reflects that debtor/appellee does not possess sufficient monies to pay all creditors, including appellant, in full.

Moreover, Section 502(b)(6) makes no distinction between claims by landlords against tenants and claims by landlords against guarantors. The purpose of the statute is to preclude landlords from obtaining disproportionately large claims based on long-term leases. Whether the claim is brought against a former tenant for unpaid rent or against a guarantor of the lease payments, the effect on other creditors is the same: "[t]he purpose of § 502(b)(6) is to compensate the landlord fairly while protecting other creditors. This rationale is applicable whether the debtor is the tenant or the guarantor of the lease." *In re Interco, Inc.*, 137 B.R. at 1005–1006. Therefore, the Court affirms the bankruptcy court's conclusion that § 502(b)(6) applies to the debtor/appellee despite the fact that he was the guarantor of the lease at issue and not the tenant.

### IV. Equitable Issues

This Court finds unconvincing appellant's argument regarding possible inequities caused by the application of § 502(b)(6) to the Cutler claim. The parties have presented conflicting evidence regarding the percentage of recovery for appellant compared to the percentage of recovery for unsecured creditors. While this Court observes that it would be troubling if a creditor who diligently reduced his claim against a debtor/appellee to a judgment recovered substantially less than unsecured general creditors, that does not appear to be the case before this Court. Congress enacted § 502(b)(6) to address the exact type of claim raised by appellant, and therefore, appellant is subject to its limitations.

### V. The Disallowance of Interest on the Cutler Claim

■ The Court finds that the bankruptcy court correctly disallowed appellant to recover interest on the Cutler claim. Section 502(b)(6) explicitly limits the recovery of

landlords to "damages resulting from the termination of a lease." The fifteen percent cap includes the interest awarded by the district court in Florida. See *In re Farley,* 146 B.R. 739, 746 (Bankr.N.D.Ill.1992); *In re Bus Stop, Inc.,* 3 B.R. 26 (Bankr.S.D.Fla. 1980).

## VI. Attorneys' Fees

■ Appellee argues that the bankruptcy court erred in permitting appellant to recover $7,500 in attorneys' fees because attorneys' fees must be calculated within the fifteen percent cap just as the interest was calculated. However, the lease at issue clearly states that the recovery of attorneys' fees is not a "payment specifically denominated as rent," which is what triggers § 502(b)(6). See *In re Farley,* 146 B.R. 739, 746 (Bankr.N.D.Ill.1992). This Court finds that the bankruptcy court correctly awarded attorneys' fees independently from the statutory cap of fifteen percent.

### CONCLUSION

For these reasons, the decision of the bankruptcy court is affirmed in all respects.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, the decision of the bankruptcy court is affirmed in all respects.