**In re EPISODE USA, INC., Debtors.**

**Bankruptcy No. 96 B 40371 (JLG).**

United States Bankruptcy Court,
S.D. New York.

Nov. 18, 1996.

As Amended Nov. 20, 1996.

Rosenman & Colin LLP, New York City, for Debtors.

Law Office of Leon H. Charney, New York City, for L.H. Charney Associates.

## DECISION ON DEBTOR'S OBJECTION TO CLAIM OF LANDLORD UNDER LEASE GUARANTEE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Prior to filing its voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), Episode USA, Inc. ("Episode" or "debtor") guaranteed a non-debtor affiliate's performance under a lease of non-residential real property. The affiliate defaulted under the lease and vacated the premises pre-petition. The landlord recovered possession of the premises post-petition. It has filed a proof of claim against the debtor on account of the guaranty. The general unsecured portion of the claim equals the sum of the unpaid pre-petition rent and the amount of future rent reserved under the lease after the date the landlord recovered the premises. The administrative priority portion of the claim consists of the accrued but unpaid post-petition rent up to that date. Debtor objects to the claim. It urges us to cap the unsecured portion under § 502(b)(6) of the Bankruptcy Code and expunge the administrative priority claim. We sustain the debtor's objection.

### Facts

The facts are not in dispute. On January 26, 1996, debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. It remains in possession of its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Debtor formerly operated a chain of women's specialty stores in the United States under the Episode name. On May 30, 1996, we approved the sale of substantially all of debtor's assets to Mothers Work Inc., including, among other things, leases for 21 of debtor's stores, together with related leasehold improvements, equipment and supplies, for approximately $2.1 million in cash and Mothers Work common stock valued at approximately $5 million.

Prior to Episode's chapter 11 filing, L.H. Charney Associates ("landlord") entered into a lease of non-residential real property with Remington Holding Corp. ("Remington"), a

non-debtor affiliate of Episode. Debtor guaranteed Remington's performance under the lease. Remington vacated the leased premises pre-petition, although landlord did not recover possession of the premises until several months post-petition. Debtor never occupied ·or otherwise used the premises. Landlord's claim consists of a general unsecured claim totalling $645,035.04 and an administrative priority claim of $38,987.21.

Debtor argues that the unsecured portion of the claim must be capped under § 502(b)(6) of the Bankruptcy Code, subject to further reduction if the premises are relet. It seeks to reduce that claim to $193,969, consisting of $66,301 in pre-petition rent and $127,668 in future rent. It calculates the future rent as the rent reserved under Remington's lease, without acceleration, for the one year period following the date of the filing of Episode's chapter 11 petition. Debtor argues that landlord's administrative priority claim must be expunged because it never used or occupied the premises.

### Discussion

Our subject matter jurisdiction of this contested matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

Pursuant to § 502(a) of the Bankruptcy Code, a claim, proof of which is filed under § 501, is deemed allowed unless a party-in-interest objects. If a claim objection is filed, § 502(b) states that

> the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition and shall allow such claim ..., except to the extent that—
>
> \*   \*   \*   \*   \*   \*
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of

a lease of real property, such claim exceeds—

> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>
> (i) the date of the filing of the petition; and
>
> (ii) the date on which such lessor repossessed, or the lease surrendered, the leased property; plus
>
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 .U.S.C. § 502(b).

Section 502(b)(6) is "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." S.Rep. No. 95-989, at 63 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849 [1]; *see also Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.),* 78 F.3d 18, 20 (2d Cir.1996) (§ 502(b)(6) designed to account for fact that "[w]hen one claimant is a landlord holding a long term lease, its single unsecured claim for twenty or thirty years of future rent could devour so much of the debtor's estate that only crumbs could be left for the other unsecured creditors"); *Cutler v. Lindsey (In re Lindsey),* 199 B.R. 580, 585 (E.D.Va.1996) (purpose of § 502(b)(6) is to preclude landlords from obtaining disproportionately large claims based on long-term leases).

The legislative history of § 502(b)(6) indicates that

> the limitation on allowable claims of lessors of real property was based on two considerations. First, the amount of the lessor's damages on breach of a real estate lease was considered contingent and difficult to prove.... Second, in a true lease of real property, the lessor retains all the risk and benefits as to the value of the real estate at the termination of the lease. Historically,

---

1. Section 502(b)(7) was redesignated as § 502(b)(6) pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353.

it was, therefore, considered equitable to limit the claims of a real estate lessor. 3 COLLIER ON BANKRUPTCY ¶ 502.02[d] at p. 502–63 n. 56 (15th rev. ed. 1996) (quoting S.Rep. No. 95–989, at 64 (1978)). This suggests that the § 502(b)(6) cap is akin to a liquidated damages provision, giving a fair remedy to both the landlord and the debtor considering that the landlord retains the property at the end of the lease, and ensuring that the landlord does not get the lion's share of the estate to the detriment of other general creditors. *See Leslie Fay Cos., Inc. v. Corporate Property Associates 3 (In re Leslie Fay Cos., Inc.)*, 166 B.R. 802, 808 (Bankr.S.D.N.Y.1994); *In re Interco*, 137 B.R. 1003, 1005 (Bankr.E.D.Mo.1992); *In re Rodman*, 60 B.R. 334, 335 (Bankr.Okla.1986); *see also Oldden v. Tonto Realty Corp.*, 143 F.2d 916, 920 (2d Cir.1944) (discussing reasons for limiting landlord claims for future rent under § 63a(9) of the former Bankruptcy Act of 1898, 11 U.S.C. § 103a(9)).

Debtor reads the statute to cap landlord's unsecured claim and relies on *Hippodrome Building Co. v. Irving Trust Co. (In re Radio–Keith–Orpheum Corp.)*, 91 F.2d 753 (2d Cir.), *cert. denied*, 302 U.S. 748, 58 S.Ct. 265, 82 L.Ed. 578 (1937), and cases following it to support its position. In that case, the debtor guaranteed the payment of rent reserved under a 17 year lease between the claimant and a bankrupt subsidiary of the debtor. The subsidiaries' bankruptcy trustee rejected the lease and abandoned the premises. Pursuant to § 77B(b)(1) of the former Bankruptcy Act, 11 U.S.C. § 207(b)(10) (the predecessor to § 502(b)(6)), the lessor's claim against the bankrupt lessee was limited to three years' rent under the lease.[2] The lessor asserted a claim against the guarantor equal to the rent reserved under the lease for the balance of the lease term. Although the statute—like its prede-

cessor—does not literally encompass claims against the lease guarantor, the court applied it, reasoning that the bankrupt guarantor should not be liable for more than its principal:

> The last question is of the three years' limit imposed by subdivision (b)(10) upon claims for "injuries" resulting from the "rejection" of leases. This is not such a claim of course, and the letter of the statute does not apply to it; yet it seems to us incredible that it should not go so far, and that the claim should be good for the full seventeen years during which the lease will run. If so, a guarantor in reorganization is liable for more than his principal; that cannot be the meaning of the statute; the guaranty is a secondary obligation and must be subject to the same limitations as the primary.

*Id.* at 756.

Landlord says that § 502(b)(6) is ambiguous and applies only when the debtor is the lessee. It contends that *Hippodrome* is inapposite because Remington, the lessee, is not in bankruptcy and urges us to follow *In re Danrik, Ltd.*, 92 B.R. 964 (Bankr.N.D.Ga. 1988). In *Danrik*, the court found that in light of the "unusual" facts that the debtor-guarantor was solvent, all other claims had been paid in full and the tenant had not filed for bankruptcy, the "equities" of the case militated in favor of granting the full amount of damages, unlimited by § 502(b)(6). *See* 92 B.R. at 972. Among other things, the court stated that limiting the landlord's claim against the guarantor would not serve the purpose of the statute to avoid disproportionate recovery for the landlord because all of the other creditors had already been paid in full. It also found that allowing the claim in full would not destroy the rehabilitative efforts of the debtor since a plan of reorganiza-

---

**2.** 11 U.S.C. § 207(b)(10) provided in relevant part as follows:

> The claim of a landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall be treated as a claim ranking on a parity with debts which would be provable under section 63(a) of this Act, but shall be limited to an amount not to exceed the rent, without acceleration, reserved by said lease for the three years next succeeding the date of surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid rent accrued up to such date of surrender or reentry....

11 U.S.C. § 207(b)(10) (repealed) (reprinted in 6 COLLIER ON BANKRUPTCY ¶ 0.06 at p. 76 (14th ed. 1978)).

tion had already been consummated. Id. at 970–71. Episode is insolvent. Its proposed liquidating chapter 11 plan does not contemplate full payment of all claims and the purpose of the statute will be undermined if the landlord's claim is not capped. Thus, the compelling equitable considerations that motivated the *Danrik* court are lacking here.

■ "The plain meaning of legislation should be conclusive, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). On its face, § 502(b)(6) neither includes nor excludes guarantors from its application. It merely states that any "claim of a lessor for damages resulting from the termination of a lease of real property" is subject to the statutory cap. The thrust of the § 502(b)(6) cap is not directed toward any particular debtor-entity; rather, it acts "to limit the amount of damages the lessor may be allowed from bankruptcy estate assets." *In re Interco,* 137 B.R. at 1005. Accordingly, in a case like this, where the debtor/guarantor is insolvent, literal application of the statute to cap the lessor's claim will not "produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031. In similar situations, other courts have reached the same conclusion for the same reasons. *See In re Lindsey,* 199 B.R. at 585; *In re Clements,* 185 B.R. 895, 901 (Bankr. M.D.Fla.1995); *In re Thompson,* 116 B.R. 610, 612–13 (Bankr.S.D.Ohio 1990); *see also Kuske v. McSheridan (In re McSheridan),* 184 B.R. 91 (9th Cir. BAP 1995) (applying § 502(b)(6) to lessor's claim against lease guarantor where both guarantor and lessee were debtors under the Bankruptcy Code); *In re Interco,* 137 B.R. at 1005 (same); *In re Revco D.S., Inc.,* 138 B.R. 528 (Bankr. N.D.Ohio 1991) (same); *In re Federated Department Stores, Inc.,* 131 B.R. 808 (Bankr. S.D.Ohio 1991) (same); *In re Rodman,* 60 B.R. at 335 (same).

Other than the *Danrik* court, at least two courts have refused to apply § 502(b)(6) to cap the unsecured claim of a lessor against a lease guarantor. *See Al Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.),* 900 F.2d 1184 (8th Cir.1990); *Bel–Ken Assocs. Ltd. Partnership v. Clark,* 83 B.R. 357 (D.Md.1988).

In *Bel–Ken Associates,* the guarantor was not in bankruptcy. The court relied upon § 524(e) of the Bankruptcy Code, non-bankruptcy law governing guarantees and "common sense" in finding that the § 502(b)(6) cap did not limit the landlord's damage claim against the non-debtor guarantor. Section 524(e) provides in relevant part that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt." 11 U.S.C. § 524(e). Under Maryland law, the court noted, a guarantor's secondary liability to a creditor becomes absolute upon default of the principal and satisfaction of the conditions precedent to liability. *Id.* at 358. The court held that this absolute liability cannot be avoided merely because the primary obligor files for bankruptcy:

> [C]ommon sense dictates that the guarantor remain fully liable even when the principal debtor seeks relief under the Bankruptcy Code. After all, what good is a guaranteed lease if the guarantor escapes liability when the debtor does? Certainly, a guarantor's liability may be limited to prevent a landlord from recovering "disproportionately large claims," *Fisher v. Lee Brothers Value World, Inc.,* 486 F.2d 1037, 1038 (9th Cir.1973) (debtor merged with guarantor prior to bankruptcy; landlord-creditor attempted to collect damages on breach of contract and breach of guaranty claims). However, the guarantor's liability is not limited merely because the debtor's liability is reduced by the trustee in bankruptcy.

*Id.* at 359. Similar considerations led the Eighth Circuit to hold in *Modern Textile* that § 502(b)(6) does not limit claims against a non-bankrupt lease guarantor. *In re Modern Textile, Inc.,* 900 F.2d at 1191 (relying on § 524(e) and Georgia guarantee law). The cases are distinguishable because neither in-

volved a debtor/guarantor. Thus, the important policy considerations underlying § 502(b)(6), which are relevant here, were not implicated in those cases.

■ Landlord's administrative priority claim cannot be predicated on the guaranty agreement because both the lease and guaranty were executed pre-petition and the liabilities arising therefrom were fixed at that time. *See In re Chateaugay Corp.*, 102 B.R. 335, 351 (Bankr.S.D.N.Y.1989) (" '[w]here the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as giving rise to a prepetition liability where the contract was executed prepetition' ") (citation omitted); *see also Employees' Retirement System v. Osborne (In re THC Financial Corp.)*, 686 F.2d 799, 802 (9th Cir.1982) (same). There is no other basis for according the claim administrative priority status.

■ To be entitled to administrative priority treatment, a claim "must have arisen from a transaction with the estate or consideration must have been given to the estate, and the debt must have benefitted the estate". 3 COLLIER ON BANKRUPTCY ¶ 503.04[1][a][i], at p. 503–26 (15th rev. ed. 1996); *accord Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.1986). Even courts that have expanded the concept of an administrative expense beyond the "benefit to the estate" rubric limit that priority to claims arising in connection with business or activities carried on by a debtor-or-possession subsequent to the petition date. *See, e.g., In re B. Cohen and Sons Caterers, Inc.*, 143 B.R. 27 (E.D.Pa.1992) (customer's claim for post-petition tort injuries entitled to administrative priority); *Chemical & Atomic Workers v. Hanlin Group, Inc. (In re Hanlin Group, Inc.)*, 176 B.R. 329 (Bankr.D.N.J.1995) ("Claims resulting from injury caused by the continued operation of the business by the debtor-in-possession are also classified as administrative expenses, notwithstanding the lack of benefit to the estate") (citations omitted); *Samore v. Boswell (In re Multech Corp.)*, 47 B.R. 747, 750–51 (Bankr.N.D.Iowa 1985) ("[t]he rejection of an assumed contract arises directly from a transaction with the

debtor-in-possession. Thus, it is the debtor-in-possession which has caused the legally cognizable injuries and the claims arising from those actions are entitled to administrative expense priority). Section 503(b) states in relevant part that allowed administrative expenses shall include:

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . .

11 U.S.C. § 503(b). Post-petition rent is ordinarily deemed an actual and necessary expenditure of operating a debtor's business. *In re Cornwall Paper Mills Co.*, 169 B.R. 844, 851 (Bankr.D.N.J.1994); *see also* 11 U.S.C. § 365(d)(3) (requiring timely performance of all lease obligations pending decision to assume or reject notwithstanding § 503(b)(1). However, Episode received no benefit from the lease since it did not occupy the premises and was not a party to the lease contract. Landlord has not suggested any other basis for finding that debtor benefitted from Remington's use of the premises. In the absence of any demonstrated benefit, landlord's claim against Episode for rent accrued under the lease after the commencement of this chapter 11 case is not entitled to priority as an administrative expense.

■ Debtor contends that if landlord relets the premises before January 26, 1997, it is entitled to a reduction of the landlord's claim for future rent. Under § 502(b)(6), the allowable amount of a landlord's claim is equal to the lesser of (i) its total rejection damages, which may take mitigation into account, and (ii) the statutory cap computed under § 502(b)(6). *See In re Iron–Oak Supply Corp.*, 169 B.R. 414, 419 (Bankr.E.D.Cal. 1994); *In re Q–Masters, Inc.*, 135 B.R. 157, 159 (Bankr.S.D.Fla.1991); *In re First Alliance Corp.*, 126 B.R. 589, 590 (Bankr.S.D.Cal. 1991), *rev'd in part on other grounds*, 140 B.R. 531 (B.A.P. 9th Cir.1992). It is not clear that Episode can assert the lessee's defense of mitigation. *See Cinema North Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135, 139 (2d Cir.1989) (citing *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 55, 241 N.Y.S.2d 834, 838, 191 N.E.2d 894, 897 (1963); *Ettlinger v.*

*National Surety Co.,* 221 N.Y. 467, 117 N.E. 945 (1917)). In any event, New York does not recognize a duty to mitigate damages by reletting premises after breach of a commercial lease. *Holy Properties Limited, L.P. v. Kenneth Cole Productions, Inc.,* 87 N.Y.2d 130, 133, 661 N.E.2d 694, 637 N.Y.S.2d 964 (1995); *Becar v. Flues,* 64 N.Y. 518 (1876); *see also Bond Street Assocs. Limited v. TJX Companies, Inc. (In re Ames Department Stores, Inc.),* 158 B.R. 35, 36 (Bankr.S.D.N.Y. 1993).

### *Conclusion*

We sustain Episode's objections to the landlord's claim, except that we reject its contention that the unsecured claim is subject to mitigation.

SETTLE ORDER.